## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

**BIOTRONIK, INC.,** an Oregon corporation,

        Plaintiff,

    v.

**MEDTRONIC USA, INC.,** a Minnesota
corporation; and **MEDTRONIC, INC.,**
a Minnesota corporation;

        Defendants.

Case No.: 03:11-cv-00366-HU

**OPINION AND ORDER**

E. Sean Donohue
DONOHUE & ASSOCIATES
1625 Umpqua Bank Plaza
One S.W. Columbia Street
Portland, OR  97258-2021

    Attorney for Plaintiffs

Jeffrey M. Edelson
Matthew A. Levin
MARKOWITZ, HERBOLD, GLADE & MEHLHAF, P.C.
Suite 3000 Pacwest Center
1211 S.W. Fifth Avenue
Portland, OR  97204-3730

Jonathan S. Parritz
Nadege J. Souvenir
MASLON EDELMAN BORMAN & BRAND, LLC
90 S. 7th Street, Suite 3300
Minneapolis, MN  55402

    Attorneys for Defendants

OPINION AND ORDER, PAGE 1

**SIMON, District Judge.**

## INTRODUCTION

In this lawsuit, Plaintiff seeks only declaratory relief. Plaintiff originally filed this action in state court in Clackamas County, Oregon, and Defendants removed the case to this court under 28 U.S.C. § 1441, asserting diversity jurisdiction under 28 U.S.C. § 1332(a). Plaintiff moves to remand the lawsuit to state court (Doc. 17) under 28 U.S.C. § 1447(c), arguing that the amount in controversy does not satisfy the $75,000 threshold required for diversity jurisdiction. Defendants move to dismiss the case for improper venue or, in the alternative, to transfer venue. (Doc. 8). On September 29, 2011, United States Magistrate Judge Dennis Hubel issued findings and recommendations ("F&R") on these two motions and referred them to this court (Doc. 43).

In his F&R, Judge Hubel recommends that Plaintiff's motion to remand be granted. He also recommends that, if this court were to find that the amount in controversy requirement has been satisfied, Defendants' motion to dismiss for improper venue and alternative motion to transfer should be denied. Defendants objected to both recommendations. The court heard oral argument on November 9, 2011.

Under the Federal Magistrates Act, the court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate." Federal Magistrates Act, 28 U.S.C. § 636(b)(1). If a party files objections to a magistrate's findings and recommendations, "the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3). *De novo* review means that the reviewing court "considers the matter anew, as if no decision had been rendered." *Dawson v. Marshall*, 561 F.3d 930, 933 (9th Cir. 2009) (citation omitted).

The court has reviewed the matter *de novo* and accepts in part and rejects in part Judge Hubel's F&R. The court rejects Judge Hubel's first recommendation that Plaintiff's motion to remand be granted. For the reasons stated below, the court finds that the amount in controversy requirement has been satisfied. Thus, Plaintiff's motion to remand is DENIED. The court accepts Judge Hubel's second recommendation for the reasons stated by Judge Hubel. Thus, Defendant's motion to dismiss and alternative motion to transfer is DENIED.

## BACKGROUND

Plaintiff, Biotronik, Inc. ("Biotronik"), is an Oregon corporation. Defendants, Medtronic USA, Inc. and Medtronic, Inc. (collectively, "Medtronic"), are Minnesota corporations. Biotronik and Medtronic are competitors engaged in the sale and marketing of cardiac rhythm management ("CRM") devices, which use electrical pulses to treat improperly beating hearts and other cardiac diseases. As alleged in the complaint and discussed by Judge Hubel:

> The market in which the parties compete is extremely competitive, and the devices they sell are technologically complex. As such, their sales personnel not only must be skilled salespeople, they also must have a great deal of technical and clinical knowledge, and as a result, they receive considerable training. To protect their investment in their employees, as well as the proprietary information to which their employees are privy, the parties "require their CRM sales representatives and managers to sign employment agreements that include post-termination noncompetition, confidentiality, and non-solicitation obligations (the "Post-Termination Obligations").

F&R, at 2:20-3:3 (citations omitted).

Rory Carmichael ("Carmichael"), who is not a party in this lawsuit, worked for Medtronic from 1997 through January 2009. In 1997, Medtronic hired Carmichael as a district sales manager. In 2005, Medtronic promoted Carmichael to regional vice president of Medtronic's Florida region. Both at the time of his initial employment and upon his promotion to vice president, Carmichael signed an employee agreement with Medtronic (the "Employee

OPINION AND ORDER, PAGE 3

Agreement") that includes Post-Termination Obligations.[1] Carmichael's last day of work for Medtronic was January 6, 2009.[2] In connection with his separation from Medtronic, Carmichael and Medtronic signed a Separation Agreement and Release (the "Separation Agreement") on January 29, 2009.[3] In addition to other provisions, Carmichael's Separation Agreement expressly preserves certain duties and obligations set forth in his Employee Agreement, including the Post-Termination Obligations.

In addition, Carmichael's Separation Agreement provides in Article 2.1 for certain "transition period compensation" (the "Transition Period Compensation") and in Article 2.2 for certain additional consideration (the "Additional Consideration"), both to be paid by Medtronic to Carmichael, subject to certain conditions. The parties agree that the precise amounts of the Transition Period Compensation and the Additional Consideration should be kept confidential for business reasons and that it is factually correct and not confidential to say that the Transition Period Compensation and the Additional Consideration are each well in excess of the $75,000 threshold amount in controversy required for diversity jurisdiction under 28 U.S.C. § 1332(a).

Article 2.3 of Carmichael's Separation Agreement with Medtronic describes certain forms of "Prohibited Conduct," many of which are similar to the Post-Termination Obligations. Among other things, Article 2.3(4) provides that, until the close of business on January 6, 2011, Carmichael may not, without the express written permission of Medtronic, "solicit, directly or indirectly, any person employed by Medtronic [in certain areas and during a certain time period] to work for any other employer." A similar restriction appears in Carmichael's Employee Agreement at Section 4.2, under the heading "Section 4: Post-Employment Restrictions."

---

[1] A copy of Carmichael's Employee Agreement with Medtronic, signed in 2005, was filed under seal as Doc. 18-1, pages 22-31.

[2] As discussed more fully below, Biotronik hired Carmichael on February 23, 2011.

[3] A copy of Carmichael's Separation Agreement was filed under seal as Doc. 18-2.

Article 2.4(c) of Carmichael's Separation Agreement provides, among other things, that if a court determines that Carmichael has violated Article 2.3 of the Separation Agreement, Carmichael must promptly repay to Medtronic the Additional Consideration payments made pursuant to Article 2.2 (the "Repayment Amount"). Medtronic refers to this Repayment Amount as "liquidated damages." In addition, Article 2.4(b) of the Separation Agreement provides that Medtronic may "terminate all payments pursuant to Articles 2.1 [the Transition Period Compensation] and 2.2 [the Additional Consideration] if Carmichael materially breaches any other provision of this Agreement or the Employee Agreement."

In August and September 2010, well after Carmichael left Medtronic in January 2009, but well before his Post-Termination Obligations and Prohibited Conduct restrictions under the Separation Agreement would have terminated on January 6, 2011, several other Medtronic employees (the "Other Former Medtronic Employees") left Medtronic and went to work for Biotronik. On September 30, 2010, Biotronik and the Other Former Medtronic Employees (but not Carmichael) filed suit against Medtronic in Oregon's Clackamas County Circuit Court, seeking a declaratory judgment relating to the post-termination obligations of these Other Former Medtronic Employees. Medtronic did not assert any counterclaims, and the lawsuit was settled and dismissed on December 10, 2010.

One week later, on December 17, 2010, Medtronic sued Carmichael (but not Biotronik) in Minnesota state court (the "Minnesota Action").[4] In the Minnesota Action, which is still

---

[4] A copy Medtronic's complaint against Carmichael in the Minnesota Action was filed under seal as Doc. 18-1. Carmichael removed that case to federal court in Minnesota, and Medtronic filed a motion to remand to Minnesota state court. The federal court in Minnesota granted Medtronic's motion to remand based on a clause in Carmichael's Employee Agreement with Medtronic that provided for exclusive jurisdiction in the state courts of Minnesota.

pending, Medtronic claims that Carmichael breached the provisions of both his Employee Agreement and his Separation Agreement with Medtronic.

Medtronic alleges in the Minnesota Action that, among other things, Carmichael is subject to the Post-Termination Obligations set forth in his Employee Agreement, including its provision in Section 4.2 that Carmichael "not solicit, cause to be solicited, or participate in or promote the solicitation of any person to terminate that person's employment with MEDTRONIC . . . ."  Minnesota Action, Complaint at ¶ 19. (Doc. 18-1). Medtronic also alleges in the Minnesota Action that Carmichael is subject to the Prohibited Conduct obligations in the Separation Agreement, including the obligation that, until January 6, 2011, Carmichael may not, without Medtronic's express written permission, "solicit, directly or indirectly, any person employed by Medtronic . . . to work for any other employer." *Id.,* at ¶ 34, quoting Separation Agreement, Article 2.3(4). Medtronic asserts that Carmichael violated these contractual obligations, among others, by recruiting the Other Former Medtronic Employees to leave Medtronic and begin work for Biotronik. *Id.,* at ¶¶ 41-50.

In the Minnesota Action, Medtronic seeks, among other things, an order "compelling Carmichael to repay Medtronic all sums paid to him under Article 2.2 of the Separation Agreement [the Additional Consideration]." *Id.,* at ¶ 80. Medtronic also claims that it is entitled "to recover the monetary damages it has sustained as a result of Carmichael's breach of the Separation Agreement, in an amount in excess of $50,000 to be proved at trial." *Id.,* at ¶ 83.

Although Medtronic sued only Carmichael in the Minnesota Action and did not sue Biotronik, Medtronic further alleged in the Minnesota Action that Carmichael "has, in fact, been working on behalf of and/or for the benefit of Biotronik, by aggressively recruiting Medtronic's employees, in direct violation of his contractual obligations to Medtronic [under both the

OPINION AND ORDER, PAGE 6

Employee Agreement and the Separation Agreement]." *Id.,* at ¶ 51. During oral argument,

Medtronic explained that, when it filed the Minnesota Action, it did not have sufficient evidence

to sue Biotronik for tortious interference with contract. (Doc. 50, at 12:2-22.)

On February 23, 2011, Biotronik hired Carmichael. On or about that same day, Biotronik

filed in state court in Clackamas County, Oregon the complaint for declaratory relief that, upon

removal to this court, constitutes the pending action. (Doc. 1-1.) In the complaint, Biotronik

seeks two declarations.  First, Biotronik seeks a declaration that "Biotronik has the right to

employ Carmichael, free from any Post-Termination Obligations relating to noncompetition and

non-solicitation that are set forth in the Medtronic Agreement [the Employee Agreement] and the

Parties' Agreement."[5] Second, Biotronik seeks a declaration that "Biotronik did not cause *any*

violation of *any* of the Post-Termination Obligations set forth in the Medtronic Agreement

[Carmichael's Employee Agreement]" (Doc. 1-1, at page 3) (emphasis added). Based on

Biotronik's second requested declaration, the court concludes that the $75,000 amount in

controversy requirement has been satisfied.

## DISCUSSION

## I.      Biotronik's Motion to Remand

A.      Standards

A civil action may be removed from state court to federal court if the district court would

have had original jurisdiction over it. 28 U.S.C. § 1441(a). Federal jurisdiction exists over all

civil actions between citizens of different States where the amount in controversy exceeds

$75,000. 28 U.S.C. § 1332(a). An action is removable only if none of the parties in interest

---

[5] Biotronik uses the phrase "Medtronic Agreement" to refer to Carmichael's Employee
Agreement with Medtronic and the phrase "the Parties' Agreement" to refer to a separate
agreement between Biotronik and Medtronic.  (Doc. 1-1, at ¶¶ 6-7.)

properly joined and served as a defendant is a citizen of the State in which the action is brought. 28 U.S.C. § 1441(b) ("forum defendant rule"). Diversity jurisdiction also requires complete diversity among the parties. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). In this case, none of the defendants is a citizen of Oregon, and there is complete diversity. The only question is whether the amount in controversy requirement has been satisfied.

The federal courts "strictly construe the removal statute against removal jurisdiction. Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted). Where the amount in controversy is in doubt, there is a "strong presumption" against removal jurisdiction, and "the defendant always has the burden of establishing that removal is proper." *Id.,* at 566. This burden may be easily satisfied if the plaintiff claims a sum greater than the jurisdictional requirement.  *Id.,* at 566. If it is unclear, however, then "the defendant bears the burden of actually proving facts to support jurisdiction, including the jurisdictional amount." *Id.,* at 567.

Courts decide whether the amount in controversy requirement has been met by first considering whether it is "facially apparent" from the complaint. *Abrego Abrego v. The Dow Chemical Co.,* 443 F.3d 676, 690 (9th Cir. 2006) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.,* 116 F.3d 373, 377 (9th Cir. 1997)). If the amount in controversy is not apparent on the face of the complaint, "the court may consider facts in the removal petition, and may 'require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Id.; see also Lewis v. Verizon Communications, Inc.,* 627 F.3d 395, 400 (9th 2010) (a district court may consider post-removal evidence in determining whether the requisite amount is in controversy); *Gaus,* 980 F.2d at 567 (if allegations of jurisdictional facts are challenged in an appropriate manner, a party "must support them by competent proof") (quoting *McNutt v. Gen.*

OPINION AND ORDER, PAGE 8

*Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936)). In evaluating a party's evidence, federal courts in the Ninth Circuit "employ a preponderance of the evidence standard when the complaint does not allege a specific amount in controversy." *Lewis,* 627 F.3d at 400. Thus, in a diversity case, a removing party relying upon summary-judgment-type evidence "has the burden of proving, by a preponderance of the evidence, that the amount in controversy exceeds $75,000." *Cohn v. Petsmart,* 281 F.3d 837, 839 (9th Cir. 2002).

The complaint in this case does not claim that any money is owed to Plaintiff. Instead, Plaintiff seeks, in essence, a declaration that Plaintiff will not and does not owe any money to Defendant. When the removed lawsuit seeks declaratory or injunctive relief, the amount in controversy is measured by the value of the "object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."). Where, as here, the lawsuit seeks a declaration of no liability, the value of the relief sought is measured by the value of the liability that would follow if liability were found to exist. *See Matsuda v. Wada,* 128 F. Supp. 2d 659, 663-64 (D. Haw. 2000); *see also* 14A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3708 (2011) ("with regard to actions seeking declaratory relief, the amount in controversy is the value of the right or the liability of the legal claim to be declared").

B.    Analysis of Medtronic's Evidence

In the complaint here, Plaintiff does not claim any money due and owing. Instead, Biotronik seeks, among other things, a declaration that it did not cause any violation of any of Carmichael's Post-Termination Obligations set forth in Carmichael's Employee Agreement with Medtronic. (Doc. 1-1, at 5:15-16.) In other words, one object of Biotronik's litigation in this case

is to obtain a declaratory judgment that it is not liable to Medtronic, even in the event that the Minnesota court concludes that Carmichael breached his contractual obligations. Armed with such a judgment, Biotronik could foreclose a claim by Medtronic for tortious interference with contract. Thus, to determine the amount in controversy, this court must measure Biotronik's potential liability to Medtronic for tortious interference, or any similar claim, based on an allegation that Biotronik caused Carmichael to violate his Post-Termination Obligations to Medtronic by soliciting for Biotronik some or all of the Other Former Medtronic Employees.[6]

To meet its burden in proving by a preponderance of the evidence that the amount in controversy exceeds $75,000, Medtronic offers three items of summary-judgment-type evidence. The first is a copy of the complaint in the Minnesota Action that Medtronic brought against Carmichael. (Doc. 18-1). The second is a copy of Carmichael's Employee Agreement with Medtronic. (Doc. 18-1, pages 22-31.) The third is a copy of Carmichael's Separation Agreement. (Doc. 18-2.) Medtronic contends that this evidence is sufficient to establish that Biotronik's potential liability to Medtronic for causing Carmichael wrongfully to solicit or recruit some or all of the Other Former Medtronic Employees exceeds $75,000.  The court agrees.

As discussed above, Carmichael's Employee Agreement, at Section 4.2, expressly provides that Carmichael "will not solicit, cause to be solicited, or participate in or promote the solicitation of any person to terminate that person's employment with MEDTRONIC . . . ." (Doc. 18-1, p. 26.) That is one of Carmichael's Post-Termination Obligations under the Employee Agreement. *Id.* In addition, that prohibited conduct is precisely what Medtronic alleges against Carmichael in the Minnesota Action. (Doc. 18-1, ¶¶ 41-50, pp. 12-14.) Moreover,

---

[6] Biotronik claims that the present case and the Minnesota Action are unrelated and that the present case seeks only a declaration with regard to conduct that occurred on and after February 23, 2011. *See F&R* at 8:14-19.  The court does not read Biotronik's second request for declaratory relief contained in Biotronik's complaint so narrowly.  (Doc. 1-1 at p. 5.)

in the Minnesota Action, Medtronic alleges that "Carmichael has, in fact, been working on behalf of and/or for the benefit of Biotronik, by aggressively recruiting Medtronic's employees, in direct violation of his contractual obligations to Medtronic." (Doc. 18-1, ¶ 51, p. 15.) As stated above, in the present declaratory judgment action, Biotronik seeks a declaration that "Biotronik did not cause any violation of any of the Post-Termination Obligations set forth in the Medtronic [Employee] Agreement." (Doc. 1-1, at p. 5.)

Thus, the relevant question is the value or amount of Biotronik's potential liability to Medtronic should it be determined that Carmichael, in violation of his contractual obligations, recruited some or all of the Other Former Medtronic Employees of behalf of Biotronik. The answer to that question, Medtronic argues, can be found in the "liquidated damages" provisions of the Separation Agreement. The court agrees. The Transition Period Compensation and the Additional Consideration provisions in Carmichael's Separation Agreement appear to be Carmichael and Medtronic's agreed-upon estimate of the damages likely to be incurred by Medtronic if Carmichael materially breaches his Post-Termination Obligations. It follows that these liquidated damages provisions[7] would also appear to be a reasonable estimate of the amount of damages likely to be incurred by Medtronic if Biotronik tortiously interfered with Medtronic's contractual relations by causing Carmichael to recruit "Medtronic's employees, in direct violation of [Carmichael's] contractual obligations to Medtronic," which is precisely what Medtronic alleges in the Minnesota Action.

If Carmichael were to materially breach any provision in either the Separation Agreement or his Employee Agreement, or engage in any "Prohibited Conduct," Medtronic would be

---

[7] Biotronik has not argued that the liquidated damages provisions in Carmichael's Separation Agreement are unreasonable or unenforceable as a "penalty." Thus, the court need not undertake such an analysis.

allowed to "terminate all payments pursuant to Articles 2.1 [the Transition Period Compensation] and 2.2 [the Additional Consideration]." Carmichael would also be obligated, under certain conditions, to repay to Medtronic any Additional Consideration that he actually received.  (Doc. 18-2, at p. 3-5.) Each of the sums for the Transition Period Compensation and the Additional Consideration, as previously noted, far exceed the required amount in controversy. (Doc. 18-2, at p. 3.) The court concludes based on this evidence that Medtronic has satisfied its burden of showing by a preponderance of the evidence that the value of the object of the litigation in this case, or the liability of the legal claim to be declared, exceeds $75,000. *See Hunt,* 432 U.S. at 347 (1977) ("In actions seeking declaratory . . . relief, . . . the amount in controversy is measured by the value of the object of the litigation."); *see also Wood v. Stark Tri-County Bldg. Trades Council,* 473 F.2d 272, 273 (6th Cir. 1973) ("The determination of the amount in controversy is fairly uncomplicated when the plaintiff seeks liquidated damages, the amount in controversy being the total of the liquidated damages.").

  In his F&R, Judge Hubel stated:

>  "At oral argument, Medtronic argued the amounts the Separation Agreement reflects were paid to Carmichael establishes the jurisdictional amount in controversy. However, Medtronic has failed to provide any evidentiary link between damages it may be able to establish in its case against Carmichael [in the Minnesota Action], and damages it would suffer from *a declaratory judgment that Biotronik is able to employ Carmichael free of Post-Termination Obligations after Carmichael's non-competition agreement has ended.*"

F&R at 11:5-12; *see also* F&R at 11 n.4 (emphasis added).

  If the only declaration sought by Biotronik related to its ability to employ Carmichael after his non-competition agreement ended, the court would agree with Judge Hubel. The court rejects the recommendation in the F&R, however, because of Biotronik's second requested

declaration: "That Biotronik did not cause *any* violation of *any* of the Post-Termination

Obligations set forth in the Medtronic Agreement [with Carmichael]." (Doc. 1-1, at p. 5:15-16)

(emphasis added). By twice using the word "any" in its second requested declaration and by not

limiting its second requested declaration with such words as "caused by Biotronik's hiring of

Carmichael on February 23, 2011," Biotronik's second requested declaration is broad enough to

include a finding that Biotronik did not cause Carmichael to solicit or recruit any of the Other

Former Medtronic Employees.

## II.    Medtronic's Motion to Dismiss or to Transfer

The court has considered Judge Hubel's recommendation that Medtronic's motion to

dismiss for improper venue and alternative motion to transfer venue be denied, Medtronic's

objections to that recommendation, and Biotronik's response. Judge Hubel's recommendation

and analysis are sound and persuasive. Accordingly, the court adopts Judge Hubel's

recommendation that Medtronic's motion to dismiss and alternative motion to transfer be denied

for the reasons stated by Judge Hubel in his F&R.

## CONCLUSION

For the foregoing reasons, this court accepts in part and rejects in part the F&R issued by

Judge Hubel (Doc. 43). Plaintiff's motion to remand (Doc. 17) is DENIED. Defendant's motion

to dismiss and alternative motion to transfer (Doc. 8) is also DENIED.

IT IS SO ORDERED.

Dated this 4th day of January, 2012.


  /s/ Michael H. Simon
Michael H. Simon
United States District Judge